IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JORDAN LEWIS TRUE,          )
                            )
    Petitioner,             )
                            )
v.                          )   Civil Action No. 3:10CV91-HEH
                            )
GENE M. JOHNSON,            )
                            )
    Respondent.             )

# MEMORANDUM OPINION
(Denying 28 U.S.C. § 2254 Petition)

Jordan Lewis True ("Petitioner"), a Virginia inmate proceeding with counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that he was denied the effective assistance of counsel:[1]

Claim 2   Trial counsel failed to demand and make specific requests before trial for exculpatory evidence of full disclosure of changes in the claims of the alleged victim as to when the alleged sexual offenses were committed, including to whom and under what circumstances the changes were communicated, failed to make such demands upon additional revelations during trial, and failed to demand appropriate sanctions. (§ 2254 Pet. 11.)

Claim 3   Trial counsel failed to properly object to the hearsay testimony of Deloris Sites (mother of complainant), and failed to request any limiting, cautionary or corrective jury instructions. (§ 2254 Pet. 20.)

---

[1] Petitioner's § 2254 Petition did not contain a Claim 1. Petitioner began numbering his claims at 2 so that the numbered claims would match the numbering system for the claims in the state habeas proceedings. The Court has omitted the emphasis in the quotations to Petitioner's claims.

Claim 4      Trial counsel Williams failed to object to the trial court's incorrect instruction to the jury that the law does not require proof beyond a reasonable doubt in order for the jury to convict the Petitioner. (§ 2254 Pet. 27.)

Claim 5      Trial counsel failed to object to the trial court's misleading instruction to the jury that the Petitioner relies upon the defense that he was not present at the time the alleged offense was committed. (§ 2254 Pet. 30.)

Claim 6      Petitioner was denied his right to effective assistance of counsel as a result of any and all of counsel's errors in Claims 2 through 5, and prejudice must be viewed in aggregate within the totality of the circumstances. (§ 2254 Pet. 34.)

Respondent has moved to dismiss on the grounds that Petitioner's claims lack merit. The matter is ripe for disposition.

## I. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's warrant to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Section 2254(e)(1) provides that, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).[2] Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

---

[2] Thus, the findings of the Virginia courts figure prominently in this Court's opinion.

2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that under the foregoing provisions, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## II. PROCEDURAL HISTORY

On December 12, 2005, the Juvenile and Domestic Relations Court for Fauquier County, Virginia ("Juvenile Court") conducted a transfer hearing on a charge that Petitioner had forcibly sodomized A.P., a male juvenile. Pet'r's Habeas Pet. Ex. C, *Lewis v. Dir., Dep't Juvenile Justice*, No. 090661 (Va. Aug. 13, 2009). The Juvenile Court certified the matter to the Circuit Court of Fauquier County ("Circuit Court"). *Id.* at 18.

On January 23, 2006, a grand jury in Fauquier County returned the following four indictments against Petitioner:

| | |
|---|---|
| Felony No. CR05-545: | "[On] or about the 13th day of October 2005, . . . [Petitioner] did unlawfully and feloniously commit forcible sodomy in that he engaged in anal intercourse with A.P., a child less than thirteen (13) years of age, who was not his spouse." |

3

| | |
|---|---|
| Felony No. CR06-60: | "[D]uring the period from on or about the 1st day of June 2005, through on or about the 12th day of October 2005, . . . . [Petitioner] did unlawfully and feloniously commit forcible sodomy in that he engaged in anal intercourse with A.P., a child less than thirteen (13) years of age, who was not his spouse." |
| Felony No. CR. 06-61: | "[D]uring the period from on or about the 1st day of June 2005, through on or about the 12th day of October 2005, . . . . [Petitioner] did unlawfully and feloniously commit forcible sodomy in that he engaged in fellatio with A.P., a child less than thirteen (13) years of age, who was not his spouse." |
| Felony No. CR06-62 | "[O]n or about the 13th day of October 2005, . . . [Petitioner] did unlawfully and feloniously commit forcible sodomy in that he engaged in fellatio with A.P., a child less than thirteen (13) years of age, who was not his spouse." |

Pet'r's Habeas Pet. Ex. D, *True*, No. 090661.

On August 16, 2006, Petitioner was tried by a jury on the foregoing charges. The jury found Petitioner guilty of the charges that he had engaged in forcible anal sodomy and fellatio with A.P. between June 1, 2005 and October 12, 2005 (Felony Nos. CR06-60, CR06-61.) The Virginia Court of Appeals aptly summarized the evidence of Petitioner's guilt as follows:

> Deloris Sites is the mother of the victim A.P. In June 2005, she and A.P. moved into Isidore Madore's home. Madore's daughter (Gabrielle) and stepson (appellant) lived in the house, too. A.P. was nine years old at the time. A.P. and appellant shared a bedroom. Sites testified that on October 20, 2005, A.P. told her appellant "was making him touch him and that he was making

4

him suck [his penis] and that [appellant] was also inserting his penis into [A.P.'s] anus." After hearing this, Sites notified the authorities and took A.P. to the hospital where he underwent a sexual assault examination.

Lisa Gorham is a registered nurse and sexual assault nurse examiner ("SANE"). She examined A.P. on October 21, 2005. Gorham found "one point of entry," namely, "a healing fissure [or tear] at the 6 o'clock position on the anus." She opined the cause of the injury was "blunt force trauma." According to Gorham, "[p]enetration could be blunt force trauma to the anal area." Research has shown that injuries located in the position where A.P. was injured "are suspicious of abuse." At the time of the examination, the injury was healed, thus Gorham opined the injury occurred, at a minimum, five days before her examination. On cross-examination, Gorham conceded that a fissure or tear can be caused by many things, such as passing a hard stool. However, on re-direct, she opined that the injury to A.P.'s external anal opening was more consistent with penetration of an object from the outside, whereas a large stool would more likely cause an injury to the interior rim.

A.P. shared a bedroom with appellant. He testified that around July 4, 2005, appellant began having sexual contact with him. At the time, A.P. was nine years old, and appellant was sixteen. Appellant would make A.P. touch and suck on his penis and submit to anal intercourse. Appellant also touched A.P.'s penis. A.P. said appellant threatened to kill his parents if A.P. ever told anybody about what they did. A.P. testified that varying levels of sexual contact occurred whenever appellant was there was him. All but one incident took place in the bedroom they shared. The trial court admitted into evidence a drawing prepared by A.P. depicting the sex acts appellant forced him to endure.

*True v. Commonwealth*, No. 2968-06-4, at 1–2 (Va. Ct. App. May 23, 2007) (alterations in original).[3]

Although the jury found that Petitioner had anally and orally sodomized A.P. between June 1, 2005 and October 12, 2005, it found him not guilty of the charges that he had orally and anally sodomized A.P. on October 13, 2005. With respect to those charges, Sites testified that, on October 13, 2005, around 7:00 p.m., she directed A.P. and

---

[3] Petitioner is the stepson of Madore.

5

Jordan to go upstairs and clean their room. (Trial Tr. 97–98.) A.P. testified, while they were in their room, "[Petitioner] made -- put his penis in my butt and made me rub it and suck it." (Trial Tr. 166–67.)[4] According to A.P., later that night, he told his mom, "[t]hat [Petitioner] was making me do those things." (Trial Tr. 167.) Sites was prohibited from testifying as to what A.P. told her during their conversation on October 13, 2005. (Trial Tr. 98–99.) Nevertheless, her testimony indicated that it was October 20, 2005 when A.P. first specifically told her that Petitioner had engaged in inappropriate sexual contact with A.P. (Trial Tr. 114.) Sites's testimony in this regard was confirmed by that of Petitioner's stepfather, Madore, who testified that when A.P. first raised the complaint against Petitioner in October of 2005, A.P. merely complained that Petitioner had directed A.P. to suck his penis, but there was no complaint of actual contact by A.P. (Trial Tr. 226.)

Additionally, the defense put on alibi evidence from both Petitioner and Petitioner's friend, Todd Suits, who testified that on the evening of October 13, 2005, Petitioner had not been at the Madore's residence. Rather, according to both Petitioner and Suits, Suits picked Petitioner up from Eastern Clearing, which was Petitioner's place of employment. (Trial Tr. 265, 279.) Thereafter, they drove to Fredericksburg, Virginia to go shopping. (Trial Tr. 265–66, 279 ) Upon returning from shopping, Petitioner spent the night on Suits's couch. (Trial Tr. 266, 279) The next morning, Suits drove Petitioner

---

[4] A.P. was unable to provide an exact date for this incident, except that it was a Thursday in October of 2005. (Trial Tr. 167, 183.) October 13, 2005 was a Thursday.

back to work. (Trial Tr. 266–67, 280.) The jury acquitted Petitioner of the two charges that alleged he had engaged in forcible sodomy with Petitioner on October 13, 2005.

Petitioner appealed his convictions, alleging that the evidence was insufficient to support his convictions. The Court of Appeals of Virginia denied True's petition for appeal. *True*, No. 2968-06-4, at 1. The Supreme Court of Virginia subsequently denied True's petition for appeal to that court. *True v. Commonwealth*, No. 072273 (Va. Apr. 3, 2008).

Thereafter, Petitioner, by counsel, filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he raised his present grounds for habeas relief. On August 13, 2009, the Supreme Court of Virginia denied Petitioner's petition for a writ of habeas corpus. *True*, No. 090661.

### III. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Allegedly Inconsistent Statements by the Victim

In a portion of Claim 2, Petitioner contends that trial counsel failed to demand exculpatory evidence regarding the victim's account of the sexual abuse. Specifically, Petitioner contends that this unrevealed exculpatory evidence includes changes in the victim's testimony regarding: (1) when the offenses occurred; (2) to whom the changes in the victim's account of the abuse were communicated; and, (3) under what circumstances the changes were communicated. In support of this claim, Petitioner emphasizes that the charge considered at the transfer hearing was limited to an incident that occurred on October 13, 2005. Petitioner notes at the transfer hearing, the victim testified the sexual abuse started "[w]hen I went to school, and [Petitioner] came back from summer break." (§ 2254 Pet. ¶ 39 (quoting Transfer Hr'g at 14).) Petitioner further contends that because the prosecution initially charged Petitioner with committing one offense on October 13, 2005, (Felony No. CR05-545) and the prosecution subsequently sought indictments for offenses between June 1, 2005 and October 12, 2005, this discrepancy demonstrates that the victim must have given differing and potentially

8

exculpatory accounts to various parties. Petitioner contends that counsel never sought disclosure of exculpatory evidence concerning the expanded time frame, and that if counsel had requested disclosures, counsel would have been able to impeach the credibility of the victim and could have possibly sought sanctions, including prohibiting the victim from testifying.

As noted by the Supreme Court of Court of Virginia, the victim never testified that the abuse had occurred only upon a single date. *True*, No. 090661, at 4.

> The record, including the transfer hearing transcript, demonstrates that there was no discrepancy in the time frame. The victim did not testify that the sexual abuse occurred on one date. Instead, the victim testified that it started "when [he] went to school, and [petitioner] came back from summer break" and that the last incident occurred before Halloween. The victim also testified that he lost count of the number of times the sexual abuse occurred. This testimony is consistent with the charges brought against petitioner; that two of the four acts of forcible sodomy occurred on October 13, 2005 and the other two acts of forcible sodomy occurred between June 1, 2005 and October 12, 2005. Moreover, petitioner merely speculates that exculpatory evidence existed but proffers none.

*Id.* Because Petitioner has not demonstrated deficiency or prejudice, this portion of Claim 2 will be dismissed.

### B. Testimony of Delores Sites

#### 1. Alleged Inconsistencies

In another portion of Claim 2, Petitioner faults counsel for not obtaining exculpatory evidence concerning an alleged discrepancy in the testimony of the victim's mother, Delores Sites. Petitioner asserts that Sites testified inconsistently regarding when her son first reported the sexual abuse by Petitioner to her. Petitioner contends that counsel never sought disclosure of exculpatory evidence concerning this discrepancy and had counsel sought such discovery, counsel could have impeached or possibly excluded Ms. Sites's testimony.

Contrary to Petitioner's suggestion, Sites did not testify inconsistently regarding the date her son first told her that Petitioner had engaged in inappropriate sexual contact. *See id.* at 5.

> Ms. Sites'[s] testimony did not have a discrepancy. Ms. Sites testified that on October 13, 2005, her son told her about 'words' of a sexual nature petitioner was saying to her son. She testified that she learned about the sexual contact between her son and the petitioner on October 20, 2005, and the testimony of Isidore Madore corroborated Ms. Sites'[s] testimony.

*Id.* Madore testified the initial complaint by A.P. against Petitioner involved inappropriate words, not inappropriate sexual contact. Madore testified that sometime in October of 2005, A.P. said that "[Petitioner] said some bad words." (Trial Tr. 224–25.) Specifically, according to Madore, Sites complained to him, "[t]hat Jordan told [A.P.] to suck his private[s]." (Trial Tr. 229.) When the subject of Petitioner's inappropriate sexual behavior was first raised in October of 2005, Madore denied that either A.P. or

10

Sites said Jordan had put his penis in A.P.'s mouth or butt. (Trial Tr. 226.) Petitioner fails to demonstrate that Sites testified inconsistently on the date she learned of the abuse or that further investigation along the lines Petitioner urges here would have yielded any significant information.[5] Because Petitioner has failed to demonstrate deficiency or prejudice, this aspect of Claim 2 will be dismissed.[6]

### 3. Alleged Failure to Make Proper Objection to Hearsay

In Claim 3, Petitioner asserts that counsel failed to make proper objections to allegedly inadmissible hearsay testimony by Sites. This claim involves the proper interpretation of the "recent complaint" exception to the rule against hearsay in cases of sexual assault set forth at section 19.2-268.2 of the Virginia Code. That statute provides:

> Notwithstanding any other provision of law, in any prosecution for criminal sexual assault under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2, a violation of §§ 18.2-361, 18.2-366, 18.2-370 or § 18.2-370.1, the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness.

Va. Code Ann. § 19.2-268.2 (West 2010). Because Claim 3 largely rests upon how the Virginia courts interpret the relevant state evidentiary rules, it is appropriate to turn directly to the Supreme Court of Virginia's disposition of this claim. *See Sharpe v. Bell,*

---

[5] The fact that, according to Sites, A.P. did not complain to her about sodomy on October 13, 2005, is confirmed by the fact the prosecution did not attempt to introduce the content of that conversation under Virginia's recent complaint exception to the hearsay rule in cases of sexual assault. *See infra* Part III.B.3.

[6] Given that Sites did not testify inconsistently, counsel reasonably refrained from moving for sanctions on that ground.

11

593 F.3d 372, 383 (4th Cir. 2010) (reversing district court's "misguided" conclusion that it could determine state court had incorrectly decided state law evidentiary issue in granting relief upon an ineffective assistance of counsel claim).

> Petitioner contends that although counsel did object to some portions of Ms. Sites'[s] testimony counsel failed to maintain the objection when Ms. Sites was asked what her son said to her on October 20, 2005, to which Ms. Sites relayed her son's claims, which amounted to oral and anal sodomy. Petitioner contends that the recent complaint exception to the hearsay rule, upon which the Commonwealth relied, was inapplicable because the victim's complaint was not recent and the victim had not yet testified. ["Claim 3(a)"]
>
> The Court holds that this portion of Claim (3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that Ms. Sites'[s] testimony regarding her son's complaints of sexual abuse was admissible pursuant to the recent complaint exception. *See Cartera v. Commonwealth*, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978) ("Under a rule unique to rape cases, evidence of an out-of-court complaint by an alleged rape victim is admissible, not as independent evidence of the offense, but as corroboration of the victim's testimony[.]"); Va. Code § 19.2-268.2. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
> In another portion of claim (3) ["Claim 3(b)"], petitioner alleges he was denied the effective assistance of counsel because counsel failed to object to questions the prosecutor asked Ms. Sites. Petitioner contends that during Ms. Sites'[s] testimony, she stated that her son told her that petitioner "was making him touch him and that he was making him suck him and that he was also inserting his penis into his anus." Petitioner contends further that counsel failed to object when the prosecutor asked Ms. Sites, "When you say suck him, what do you mean?" to which Ms. Sites responded, "By sucking his penis," and "When you say rubbing, what do you mean by that?" to which Ms. Sites responded, "Rubbing his penis." Petitioner contends that Ms. Sites'[s] "testimony concerning the meaning of the terms "sucking" and "rubbing" was objectionable because the testimony was irrelevant, speculative, assumed facts not in evidence, and/or sought inadmissible opinion evidence.
>
> The Court holds that this portion of claim (3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in

> *Strickland.* The record, including the trial transcript, demonstrates that the prosecutor was asking Ms. Sites what she meant by the terminology she was using as opposed to what the victim meant. The testimony was necessary to establish whether Ms. Sites was relaying a "recent complaint" that corroborated the victim's testimony. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
> In another portion of claim (3) ["Claim 3(c)"], petitioner alleges he was denied the effective assistance of counsel because counsel failed to request that a "limiting, cautionary, or corrective" jury instruction be given if Ms. Sites'[s] testimony was applicable pursuant to the recent complaint exception to hearsay, Va. Code § 19.2-268.2. Petitioner contends that if the statute applied, counsel should have sought a limiting instruction informing the jury that the testimony could only be considered to corroborate the victim's testimony. Petitioner contends further that by failing to request a cautionary or limiting instruction, counsel allowed the jury to consider hearsay and opinion evidence "on ultimate issues of fact in the case" as substantive evidence.
>
> The Court holds that this portion of claim (3) satisfies neither the "performance" nore the "prejudice" prong of the two-part test enunciated in *Strickland.* Requesting a limiting instruction regarding the proper use of Ms. Sites'[s] testimony admitted under the recent complaint exception would have highlighted the victim's testimony in the minds of the jury. Petitioner does not present any evidence to demonstrate that he suffered prejudice from counsel's failure to request a cautionary or limiting instruction nor does petitioner proffer the limiting instruction he contends counsel should have requested. Thus, Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*True*, No. 090661, at 5–8. Given the Supreme Court of Virginia's interpretation of the relevant state evidentiary law, Petitioner fails to demonstrate that counsel was deficient or that he was prejudiced with respect to Claims 3(a) and 3(b). *Sharpe*, 593 F.3d at 383. Furthermore, the Supreme Court of Virginia's conclusion that Petitioner failed to demonstrate deficiency in conjunction with Claim 3(c) is reasonable. *See* 28 U.S.C. §

2254(d). With respect to Claim 3(c) there is an additional basis for concluding Petitioner cannot demonstrate prejudice. There was some uncertainty as to the date that the last acts of forcible sodomy occurred. This led to Petitioner's acquittal on the charges that he sodomized A.P. on October 13, 2005. Nevertheless, the testimony and evidence demonstrating that Petitioner had sodomized A.P. on multiple occasions in the months prior to October 13, 2005, was fairly compelling. Petitioner fails to demonstrate that had counsel sought a limiting instructing with respect to Sites's testimony there is a reasonable probability that he would have been acquitted with respect to the charges for which he ultimately was convicted. Accordingly, Claims 3(a), 3(b), and 3(c) will be dismissed.

### 4. Jury Instructions on Reasonable Doubt

On one occasion, during its oral charge to the jury, the Circuit Court "misspoke," *True*, No. 090661, at 8, and provided the jury with an erroneous instruction on reasonable doubt. Specifically, the Circuit Court stated:

> The defendant is presumed to be innocent. You should not assume the defendant is guilty because he has been indicted and is on trial. This presumption of innocence remains with the defendant throughout the trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves each and every element of the offense beyond a reasonable doubt.
> *This does not require proof beyond a reasonable doubt* or all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence. However, suspicion or probability of guilt is not enough for a conviction.
> There is no burden on the defendant to produce any evidence.

(Trial Tr. 322–23 (emphasis added).) Nevertheless, Petitioner cannot demonstrate prejudice flowing from this misstatement because both before and after this misstatement, the Circuit Court clearly informed the jury that the prosecution had the burden of proving Petitioner's guilt beyond a reasonable doubt. *See United States v. Edwards*, 215 F. App'x 417, 421–22 (6th Cir. 2007) (rejecting similar claim). When the Circuit Court charged the jury with respect to each of the four crimes, it correctly stated the law and emphasized that the jury must not find Petitioner guilty unless the Commonwealth proved the relevant elements of the crimes beyond a reasonable doubt. (Trial Tr. 323–28.) Additionally, the Circuit Court provided the jury with written instructions during their deliberations which read in part: "'This presumption of innocence remains with the defendant throughout the trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves each and every element of the offense beyond a reasonable doubt. This does not require proof beyond all possible doubt.'" *True*, No. 090661, at 9. Given the totality of instructions, Petitioner fails to demonstrate there is a reasonable probability that he would have been acquitted had counsel objected and the Circuit Court corrected its misstatement. *See Edwards*, 215 F. App'x at 421–22. Accordingly, Claim 4 will be dismissed.

### 5. Alibi Instruction

In Claim 5, Petitioner contends that counsel was deficient for failing to object to the allegedly misleading instruction with respect to his alibi defense. The pertinent instruction provided:

15

> Jordan True relies upon the defense that he was not present at the time and place the alleged offense was committed. If, after consideration of all the evidence, you have reasonable doubt that Jordan True was present at the time and place the alleged offense was committed, you shall find him not guilty.

(Circuit Court Rec. 23; Trial Tr. 326.) Petitioner contends, "This jury instruction misinformed the jury of the law, limited what arguments of innocence could be accepted by the jury, and was written in an unacceptably confusing manner." (§ 2254 Pet. ¶ 114.) Petitioner asserts the instruction made it appear to the jury that the only way it could find him not guilty was if it believed Petitioner's alibi defense.

In rejecting this claim the Supreme Court of Virginia stated:

> The record, including the trial transcript and the jury instructions, demonstrates that the written jury instructions properly informed the jury as to the burden of proof and this written jury instruction was taken verbatim from Virginia Model Jury Instruction, Criminal, 52.100, and this Court expressly approved this instruction in *Bassett v. Commonwealth*, 222 Va. 844, 856–57, 284 S.E.2d 844, 852 (1981), for alibi defenses. Petitioner fails to present any evidence that the jurors failed to follow the written instructions. Petitioner has also failed to proffer an alternative instruction that petitioner deems would have been proper. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*True*, No. 090661, at 10–11.

In his federal habeas proceeding, Petitioner has not proffered a more acceptable alibi instruction. Moreover, in addition to his specific alibi defense pertaining to the offenses that were alleged to have occurred on October 13, 2005, Petitioner offered a vague alibi defense to the charges that he sodomized A.P. between June 1, 2005 and

October 12, 2005. Specifically, the defense suggested that Petitioner was not staying in the same home with A.P. for much of that period. Jody Southerland testified that Petitioner spent most of the summer of 2005 at Southerland's home in Orange County, Virginia. (Trial Tr. 213–15.) Additionally, Michael Stead testified that he regularly drove Petitioner to and from Southerland's home in the summer of 2005. (Trial Tr. 216–17.) Given these circumstances, Petitioner fails to demonstrate that counsel was deficient for failing to challenge the above alibi instruction. Accordingly, Claim 5 will be dismissed.

### 6. Aggregate Prejudice

Lastly, in Claim 6, Petitioner asserts that, when the errors of counsel are considered cumulatively, he was denied the effective assistance of counsel. The cumulative analysis that Petitioner requests is not permitted here because, with the exception of Claim 4, the Court has rejected each of Petitioner's claims that counsel performed deficiently. *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998). "[A]n attorney's acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Id.* (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)). Accordingly, Claim 6 will be dismissed.

### IV. CONCLUSION

The motion to dismiss will be granted. The petition for a writ of habeas corpus will be denied and the action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Petitioner is entitled to further consideration in this matter. A certificate of appealability is therefore denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: March 17, 2011
Richmond, Virginia